UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

DEAN WOOD,

        Plaintiff,

        v.                                            Case No. 06-CV-7

CAPITAL ONE AUTO FINANCE, INC.,

        Defendant.
_____

**ORDER**

Plaintiff Dean Wood filed a complaint pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (FCRA), alleging that the defendant, Capital One Auto Finance, Inc. (Capital), accessed the plaintiff's consumer credit report and those of other individuals, without their express consent or any other lawful reason. Wood and approximately 63,305 other Wisconsin residents received a notice of pre-approval for automobile financing from Capital. (O'Reilly Decl. Ex. A; Khatiblou Aff. ¶ 3.) Wood asserts that the mailing violates 15 U.S.C. § 1681b by not offering a "firm offer of credit" within the meaning of the FCRA, which is essential when a potential creditor accesses someone's credit report without that person's consent. On January 25, 2006, Wood filed a motion for class certification. Wood proposes to represent a class made up of "all persons with Wisconsin addresses to whom Defendant sent solicitations in the form of Exhibit A [to the Declaration of Robert K. O'Reilly] since November 20, 2004." (Mot. for Class Cert. 1.) Capital opposes the motion for class certification and filed a response brief and supporting documents

on July 14, 2006. For the reasons stated below, the court will grant the motion for class certification.

The plaintiff has the burden of demonstrating that certification of the class is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The plaintiff must establish a class action will "advance 'the efficiency and economy of litigation which is a principal purpose of the procedure.'" *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)).

The court will conduct a two-step analysis to determine whether class certification is appropriate. First, the plaintiff must satisfy all four requirements of Federal Rule of Civil Procedure 23(a), which are numerosity, commonality, typicality, and adequacy of representation. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Second, the plaintiff must satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

Numerosity pursuant to Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]he court is entitled to make common sense assumptions in order to support a finding of numerosity." *Patrykus v. Gomilla*,121 F.R.D. 357, 360 (N.D. Ill. 1988). Here, Capital states that the mailing was sent to approximately 63,305 Wisconsin addresses, (Khatiblou Aff. ¶ 3) and does not dispute that the proposed class meets the

numerosity requirement. Thus, the court concludes the proposed class is sufficiently large to satisfy the numerosity requirement of Rule 23(a).

Commonality pursuant to Rule 23(a)(2) requires the presence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The presence of some factual variations among class members' experiences will not defeat class certification. *Id.* at 1017. Plaintiffs need only show there is "at least one question of law or fact common to the class" to satisfy the commonality requirement. *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991).

Capital asserts that Wood does not share common factual and legal issues with other members of the proposed class. Wood testified at his deposition that he did not open the mailing from Capital, read the mailing, respond to the mailing, or attempt to opt out of similar future mailings. (Wood Dep. 33, 34, 42.) Wood also stated that he did not satisfy the condition that he have at least $1,500 in monthly income to qualify for the offer. (Wood Dep. 40.) Capital claims that Wood does not share common legal issues with persons who, unlike Wood, read the mailing upon receiving it, opted out of receiving any similar future mailings, applied for and were approved for an automobile loan, or satisfied all of the credit criteria on the mailing. However, these details do not effect the common fact that Capital accessed the proposed class members' consumer credit reports and all the proposed class members received the same or substantially similar mailing from Capital.

Furthermore, the legal issue raised in the complaint, whether the mailing violates the FCRA by not qualifying as a "firm offer of credit" within the meaning of the FCRA, depends on the terms of the offer, not on Wood's or the other recipients' idiosyncratic circumstances. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 956 (7th Cir. 2006). Given that Capital accessed all the proposed class members' consumer credit reports and the terms and conditions in the initial mailing were the same or substantially similar for each recipient, the legal issue is common to Wood and the proposed class members.

In *Murray*, the Seventh Circuit addressed circumstances similar to this case. In *Murray*, GMACM claimed that the court should take into account each recipient's specific circumstances when determining whether a firm offer of credit has been made. The *Murray* court noted that according to GMACM's claim,

> a court cannot know whether a 'firm offer of credit' has been made without examining every recipient's circumstances, and the need to do this for 1.2 million people would make class treatment impractical. The statutory definition of "firm offer" does not ask about how consumers react, however; it asks what the offeror has done– what terms have been extended, whether they are honored if a consumer accepts.

*Id.* at 955. Similarly, in order to determine whether Wood shares common questions of law or fact with the proposed class members, the court need not examine how each of the recipient's of Capital's mailing reacted to the mailing. Wood and the members of the proposed class all received the same or substantially similar offer from Capital. Accordingly, Wood shares a commonality of facts and legal claims with the rest of the proposed class sufficient to satisfy the commonality requirement under Rule 23(a)(2).

Typicality pursuant to Rule 23(a)(3) requires the representative's claims be typical of those of the class. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Since "commonality and typicality are closely related, a finding of one often results in a finding of the other." *McKenzie v. City of Chicago*, 175 F.R.D. 280, 286 (N.D. Ill. 1997). Here, Wood's claim and the proposed class members' claim both arise out of the same course of conduct, specifically, Capital accessing their consumer credit reports and the receipt of Capitol's mailing. Additionally, Wood's claim and the proposed class members' claim are both based on the same legal theory, that the mailing does not qualify as a "firm offer of credit" within the meaning of the FCRA. Thus, the court is satisfied there is typicality between Wood and the other proposed class members within the meaning of Rule 23(a)(3).

Adequacy of representation pursuant to Rule 23(a)(4) requires the named plaintiff to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation has three requirements. First, the chosen class representative cannot have antagonistic or conflicting claims with other members of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Second, the named representative must have "a sufficient interest in the outcome to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986). Third, counsel for the named plaintiffs must be competent, experienced,

qualified, and generally able to conduct the litigation vigorously. *Kriendler v. Chemical Waste Mgmt.*, Inc., 877 F. Supp. 1140, 1159 (N.D. Ill. 1995).

Capital asserts that Wood is inadequate to represent the proposed class because he has a prior felony conviction for a crime of dishonesty. Specifically, Wood testified at his deposition that he was fired from a job in 1990 for misappropriating company funds. (Wood Dep. 12.) Wood testified that a criminal action was brought against him and he pled guilty and was sentenced to two years probation. (Wood Dep. 13-16.) Capital asserts that because Wood has a criminal conviction for a crime of dishonesty, he lacks the requisite honesty and integrity to serve as a class representative. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549 (1949) (holding that diligence, wisdom, and integrity are important considerations in allowing any plaintiff to represent a class).

Capital also asserts that Wood is inadequate to represent the proposed class because he did not meet the condition that he have at least $1,500 in monthly income to qualify for the offer. Additionally, Capital claims that Wood misunderstands the nature of the complaint. Capital does not dispute the adequacy of plaintiff's counsel, Ademi & O'Reilly, a law firm with extensive experience in consumer class action litigation. (O'Reilly Decl. Ex. E.)

Capital points to no case which suggests that plaintiffs who have a prior conviction for a felony or a crime of dishonesty are inadequate class representatives *per se*. Indeed, while some courts have rejected the appointment of convicted felons as class representatives, a felony conviction does not necessarily preclude a person

from serving as a class representative. *See e.g., Turner v. Glickman*, 207 F.3d 419 (7th Cir. 2000) (class representative, a convicted felon, represented a class composed of other convicted felons who were made ineligible for federal food stamp benefits under 21 U.S.C. § 862a); *United States ex rel. Green v. Peters*, 153 F.R.D. 615 (N.D. Ill. 1994) (certifying class composed of persons with pending appeal from felony conviction in the Circuit Court of Cook County); *Randle v. SpecTran*, 129 F.R.D. 386, 392 (D. Mass. 1988)(holding that a felony criminal record is not *per se* disqualifying as a class representative. A plaintiff's "adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as allegedly and tenuously evidenced by their prior criminal record."); *Haywood v. Barnes*, 109 F.R.D. 568, 579 (E.D.N.C. 1986) (holding that a felony criminal record is not *per se* disqualifying as a class representative); *Service Spring, Inc. v. Cambria Spring Co.*, 1984 U.S. Dist. LEXIS 20671, 1984 WL 2925 (N.D. Ill. 1984) (denying motion to disqualify class representative who had been involved in prior felonious conduct).

Here, Wood's conviction occurred 16 years ago, has no relation to this case, and there has been no subsequent conduct to suggest that Wood lacks the personal qualities necessary to represent a class in this civil suit. The record suggests that Wood is an adequate class representative who shares a common objective and legal position with the proposed class members. Capital has not asserted that Wood's interests are adverse to the interests of the proposed class members, and it appears that Wood has no antagonistic or conflicting claims with other members of the

proposed class. Additionally, nothing suggests that Wood lacks "a sufficient interest in the outcome to ensure vigorous advocacy." *Riordan*, 113 F.R.D. at 64. Furthermore, the record suggests that Wood understands the nature of the complaint and knows that the alleged wrongful conduct in the complaint is that Capital's mailing was not a "firm offer of credit." Specifically, Wood's testimony at his deposition that Capital's mailing lacked "the interest rate and time frame" (Wood Dep. 41), and other statements, indicates that Wood understands the substance of his and the proposed class' claim.

Capital's assertion that Wood is inadequate to represent the proposed class because he did not meet the condition that he have at least $1,500 in monthly income to qualify for the offer focuses on the individual circumstances of Wood. However, as noted above, to address the legal issue in this case, the court focuses on the terms of the offer in the initial mailing, not on Wood's or the other recipients' idiosyncratic circumstances. *See Murray*, 434 F.3d at 956.

Finally, a review of the firm biography for Wood's counsel, Ademi & O'Reilly, (O'Reilly Decl. Ex. E) reveals that the firm is "competent, experienced, qualified, and generally able to conduct the litigation vigorously." *Kriendler*, 877 F. Supp. at 1159. Thus, the court believes each of the adequacy of representation requirements are satisfied within the meaning of Rule 23(a)(4).

The court will now determine whether Wood can satisfy one of the requirements of Rule 23(b). Wood seeks to certify the class under Rule 23(b)(3) which allows for certification when "the court finds that the questions of law or fact

common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Capital claims that in determining whether the mailing constitutes a "firm offer of credit" within the meaning of the FCRA, individual questions of fact predominate over questions of fact common to all the members of the proposed class. Capital claims that when the nature of the credit offer does not permit all terms to be specified in the initial mailing, such as the notice of pre-approval for automobile financing at issue in this case, the court is required to take into account the circumstances beyond the mailing itself in order to determine whether the mailing constitutes a "firm offer of credit" within the meaning of the FCRA. In support of this position, Capital notes that creditors obtain information that is not provided by the credit reporting agencies, such as a potential customer's income, directly from the potential customer in the application process. Under the FCRA, the offer of credit may be conditioned on this additional information. 15 U.S.C. § 1681a(l).

A "firm offer of credit" in the FCRA is defined as follows:

The term "firm offer of credit or insurance" means any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:

> (1) The consumer being determined, based on information
> in the consumer's application for the credit or insurance,
> to meet specific criteria bearing on credit worthiness
> [creditworthiness] or insurability, as applicable, that are
> established–

> > (A) before selection of the consumer for the offer; and
>
> > (B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.
>
> (2) Verification.
>
> > (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness [creditworthiness] or insurability of the consumer; or
>
> > (B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness [creditworthiness] or insurability.
>
> (3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was–
>
> > (A) established before selection of the consumer for the offer of credit or insurance; and
>
> > (B) disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(l).

Although the FCRA permits a "firm offer of credit" to be subject to certain conditions, the Seventh Circuit in *Cole v. U.S. Capital, Inc*, 389 F.3d 719 (7th Cir. 2004), held that in order to qualify as a "firm offer of credit" under the FCRA, the

initial mailing must have value to the recipient. *Id.* at 726. The value or benefit to the recipient of a "firm offer of credit" justifies the creditor's access to the recipient's credit report.

> The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation.

*Id.* at 726-27. The *Cole* court also noted that when determining whether a mailing constitutes a "firm offer of credit," courts should focus on the substance rather than the form of the offer:

> a court must consider the entire offer and the effect of all the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit.

*Id.* at 728.

To decide whether Capital's mailer constitutes a "firm offer of credit," the court takes into account the entire offer, including the conditions expressed in the offer, and acknowledges that some recipients of the offer, like Wood, might not meet those conditions. However, if the court were required to evaluate each recipient's circumstances and examine the ultimate terms offered to each recipient, as Capital suggests, such an approach necessarily implies that a mailing constitutes a "firm offer of credit" for some but not all of the recipients. Instead, the value of the offer

is judged by the normal consumer standard. *Murray*, 434 F.3d at 955. As the Seventh Circuit noted in *Murray*, "We do not read *Cole* . . . to require a consumer-by-consumer evaluation. An offer has value to 'the consumer' if it is useful to the normal consumer." *Id.*

Similar to GMACM in *Murray*, in order to avoid class certification Capital has adopted a position that would make it impossible for any potential lender to know beforehand whether it is entitled to obtain credit information. If a creditor were required to know that each recipient would ultimately qualify for the offer before accessing their consumer credit report, any recipient who does not meet the conditions of the offer "could appear, assert that the offer was worthless given his financial circumstances, and obtain damages if not an injunction." *Murray*, 434 F.3d at 956. The *Murray* court recognized that such a rule would take away the benefit of the "firm-offer proviso to the Fair Credit Reporting Act" and would make offers of credit so risky "that any prudent, law-abiding firm would have to withdraw from the business." *Id.*

Rather than looking at each recipient's individual circumstances including whether they would ultimately qualify for the offer, when determining whether the mailing constitutes a "firm offer of credit," the court need look no further than the terms and conditions in the mailer itself, whether the terms offered in the mailing have sufficient value to the recipients to justify the creditor accessing their consumer credit report, and whether the terms were honored when recipients accepted the offer. *See e.g., Murray*, 434 F.3d at 956 ("Nothing in *Cole* requires an offer's value

to be assessed *ex post*, and recipient by recipient. To decide whether GMACM has adhered to the statute, a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), and whether the terms are honored when consumers accept.").

Here, the terms and conditions of the offer in the initial mailing were the same or substantially similar for all the recipients. Thus, the court concludes that the questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual proposed class members under Rule 23(b)(3). For the fair and efficient adjudication of the controversy, the court concludes that a class action is superior to thousands of individual lawsuits interpreting the same facts and legal issue. As the *Murray* court noted, "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray*, 434 F.3d at 953. Accordingly, the court concludes that it is proper to certify the plaintiff's proposed class under Rule 23(b)(3).

Finally, it should be noted that in addressing the motion for class certification the court took into consideration the plaintiff's entire reply brief and the supplemental authority filed by the plaintiff on August 23, 2006. Thus, the plaintiff's motions to file an enlarged reply brief and to file supplemental authority were granted.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to file an enlarged reply brief (Docket # 29) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's expedited motion to file supplemental authority (Docket # 31) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that pursuant to Rule 23(b)(3), the plaintiff's motion for class certification (Docket # 4) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the following plaintiff class be and hereby is **CERTIFIED**:

> All persons with Wisconsin mailing addresses who the defendant, Capital One Auto Finance, Inc., sent or caused to be sent a mailing in the form of Exhibit A to the Declaration of Robert K. O'Reilly on or after November 20, 2004.

**IT IS FURTHER ORDERED** that the plaintiff, Dean Wood, shall be the class representative and plaintiff's counsel, Ademi & O'Reilly, LLP, are appointed as counsel for the class under Rule 23(g);

**IT IS FURTHER ORDERED** that pursuant to Rule 23(c)(2)(B), the plaintiff shall submit a proposed form of notice within 10 days, including the class members' rights to opt out of the class.

Dated at Milwaukee, Wisconsin this   19th   day of September, 2006.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Court